UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA<br><br>Plaintiff,<br>Defendant in Counterclaim,<br>v.<br><br>THOMAS L. MENARD<br><br>Defendant,<br>Plaintiff in Counterclaim,<br>and<br><br>ADAM SHIPPEE<br><br>Defendant,<br>and<br><br>KYLINA BRAGA,<br>BRANDON SHIPPEE,<br>DYLANA SHIPPEE<br>And DOES 1-5<br><br>Defendants. | CIVIL ACTION NO. 06-395T |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S OBJECTION TO DEFENDANT THOMAS MENARD'S MOTION TO DISMISS INTERPLEADER ACTION**

Pursuant to Rule 7(b)(1) of Local Rules of the United States District Court for the District of Rhode Island, plaintiff The Prudential Insurance Company of America ("Prudential") hereby submits this memorandum in objection to Defendant Thomas Menard's Motion to Dismiss Interpleader Action. In opposition to the motion, Prudential states as follows:

## I. INTRODUCTION

By this interpleader action Prudential seeks relief under Rule 22 of the Federal Rules of Civil Procedure because it may be exposed to double or multiple liability relating to a life insurance policy it issued insuring the life of Dawn Shippee ("Ms. Shippee"). Defendants

Thomas L. Menard ("Menard") and Adam Shippee have asserted competing claims against the policy's proceeds, and Prudential has determined that contingent beneficiaries, defendants Kylina Braga, Brandon Shippee, and Dylana Shippee may also have claims to the proceeds.[1] By its Complaint for Interpleader ("Complaint") Prudential, a stakeholder with no claim to the proceeds, seeks to deposit the stake with the Court and be discharged from this action. Rule 22 allows a disinterested stakeholder who is willing to release the funds to the rightful claimant, "to put the money … in dispute into court, withdraw from the proceeding, and leave the claimants to litigate between themselves the ownership of the fund in court." Commercial Union Ins. Co. v. United States, 999 F.2d 581, 583 (D.C. Cir. 1993)(citation omitted).

Menard has filed his motion to dismiss the Complaint. In his motion Menard argues, among other things, that there are no competing claims and that even if there were, the Slayers' Act does not bar his claim to the proceeds. Menard has not identified the Rule of Civil Procedure upon which he relies in support of his motion to dismiss. However, after reviewing the motion it appears that Menard contends that the Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Hence, Prudential considers Menard's motion to be one seeking dismissal for failure to state a claim upon which relief can be granted, and it has responded to the motion based on that understanding.

## II. FACTS AND PROCEDURAL HISTORY

The facts and procedural history, insofar as they are relevant to the motion to dismiss, are as follows. Prudential issued life insurance policy number 74940295 (the "Policy") insuring the

---

[1] Menard filed a Prudential Financial Life Insurance and Annuity Death Benefits Claim Form. As discussed more fully on page 5, infra., in his answer to the Complaint Adam Shippee requested that "he be declared the surviving husband of the late insured and that he then be further awarded his statutory share of his late wife's Estate pursuant to R.I. Gen. Laws §33-1.1.-10, *et seq*."

life of Ms. Shippee. Ms. Shippee died on December 29, 2002. Complaint ¶ 2. The Rhode Island State Police reported that the cause of death was blunt force trauma to the head and drowning. Menard is Ms. Shippee's father as well as the Policy's primary beneficiary.[2] On April 16, 2003 Menard submitted a claim form in which he requested the Policy's death benefits, and he enclosed with the claim a Death Certificate relating to Ms. Shippee. Complaint ¶¶9, 10. Since the Certificate identified the cause of Ms. Shippee's death as "Pending further studies," Prudential conducted an investigation. Complaint ¶ 10. During its investigation Prudential repeatedly contacted the Rhode Island law enforcement officials charged with investigating Ms. Shippee's death, and on each occasion it was informed that the death was considered a homicide, that the investigation was ongoing, and that Menard was considered a suspect in the homicide. Complaint ¶¶ 11, 12.

As a beneficiary of the Policy, if Menard's claim was later disqualified owing to the operation of Rhode Island's slayer statute, R.I. Gen. Laws § 33-1.1-11 ("Slayer's Act"), then Ms. Shippee's heirs, the other defendants in this action, would have viable claims to the proceeds. Complaint ¶ 15. Thus, Menard and the contingent beneficiaries are defendants in this interpleader action.

Rule 22 of the Federal Rules of Civil Procedure allows disinterested stakeholders like Prudential to deposit funds into a district court's registry if the stakeholder is "or may be exposed to double or multiple liability." Since Prudential was concerned about the prospect of incurring double or multiple liability, on September 1, 2006 it filed the Complaint and respectfully requested that the Court determine the correct person or persons to whom Prudential should pay the Policy's proceeds and interest. Complaint ¶ 21. On October 4, 2006 defendant Adam

[2] The Policy's contingent beneficiary predeceased Ms. Shippee. Complaint ¶ 17.

Shippee, Ms. Shippee's former husband, filed his answer to the Complaint. On January 7, 2007 Menard filed his answer and counterclaim. No answer has been filed on behalf of Ms. Shippee's children, Kylina Braga, Brandon Shippee, or Dylana Shippee.[3] On May 7, 2007 Prudential filed a motion in which it requested that it be allowed to deposit the proceeds into the Court's registry.

Prudential opposes Menard's motion to dismiss on the ground, among others, that it is presently exposed to the threat of double or multiple liability. Further, there is a real likelihood that the number of adverse claims to the policy's proceeds will increase. Since the existing adverse claim and the anticipated adverse claims satisfy the First Circuit's minimum threshold level of substantiality, Prudential's interpleader is justified and is not subject to dismissal.

## III. ARGUMENT

### A THE COMPLAINT ADEQUATELY AND SUFFICIENTLY STATES A CAUSE OF ACTION ON WHICH RELIEF MAY BE GRANTED AND ACCORDINGLY MAY NOT BE DISMISSED CONSISTENTLY WITH CONTROLLING LAW.

A court may not dismiss a complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In considering the merits of a motion to dismiss, the court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint, and matters of which judicial notice can be taken. Nollet v. Justices of the Trial Court of Mass., 83 F.Supp.2d 204, 208 (D.Mass. 2000), aff'd 248 F.3d 1127 (1st Cir. 2000). Furthermore, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). In

[3] Prudential has filed a motion seeking to have the Court appoint a guardian *ad litem* for Ms. Shippee's minor children. That motion has not been opposed and the time for doing so has lapsed.

deciding such a motion, the court must merely determine whether the allegations of the complaint constitute a statement of claim under the liberal pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure. Badillo Santiago v. Andreau Garcia, 70 F.Supp.2d 84, 86 (D.P.R.1999).

In this action, the allegations of the Complaint, if read in the light most favorable to the plaintiff, and with all permissible inferences drawn therefrom in plaintiff's favor, are more than adequate to support the relief Prudential seeks. Accordingly, Menard's motion must be denied.

B. PLAINTIFF'S COMPLAINT FOR INTERPLEADER MEETS THE REQUIREMENTS OF RULE 22 SINCE PRUDENTIAL IS OR MAY BE EXPOSED TO DOUBLE OR MULTIPLE LIABILITY.

This is an action for interpleader under Fed. R. Civ. P. 22, and like the interpleader statute, interpleader under Rule 22 provides that a neutral stakeholder asserting no claim to the disputed funds and having surrendered the disputed funds to the custody of the court should be discharged from the action. United Bank of Denver v. Oxford Properties, Inc., 683 F.Supp. 755, 756 (D. Colo. 1998); Federal Sav. & Loan Ins. Corp. v. Bass, 576 F.Supp. 848, 851 (N.D. Ill. 1983).

Rule 22 provides, in pertinent part, that "[p]ersons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or *may* be exposed to double or multiple liability." Fed. R. Civ. P. 22(1) (emphasis added).[4] Further, the jurisdiction of the federal district courts in interpleader actions filed pursuant to Rule 22 extends both to potential and actual claims. Minn. Mut. Life Ins. Co. v. Ensley, 174 F.3d 977, 980 (9th Cir. 1999). The purpose is to protect the stakeholder against the possibility of multiple

4 It is beyond any reasonable dispute that the meaning of the term "calim" in Rule 22 encompasses more than just claims submitted on approved insurance claim forms.

liability on the same obligation, even where only one claim is pending. Federal Civil Procedure Before Trial (Rutter Group 2006), Ch. 10:90, p. 10-25. Actual claims need not have been filed, it is sufficient that the stakeholder can demonstrate a real and reasonable fear of multiple liability. Dunbar v. U.S., 502 U.S 506, 511 (1974), citing State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523 (1967). If the stakeholder has a *bona fide* fear of several prospective claims, interpleader is proper. The relevant merit of the claims is not relevant. Algemene Bank Nerderland, N.V. v. Soysen Tarim Urunleri Dis Ticaret Ve Sanayi, A.S., 748 F.Supp. 177, 180 (S.D.N.Y. 1990). The stakeholder need only demonstrate that it is or may be exposed to multiple liability with respect to the property it holds because of conflicting claims. Interfirst Bank Dallas, N.A. v. Purolator Currier Corp., 608 F.Supp. 351, 353 (D.C. Tex. 1985).

Prudential has joined all parties with a purported interest in the proceeds in a single action in this Court, and as a disinterested stakeholder it seeks only to pay the stake into the Court for a determination as to the defendants' rights to such proceeds. Moreover, since there are two existing claims to the stake, and there exists a potential for additional claims, Prudential has a *bona fide* fear of incurring multiple liability.

1. Prudential Is Exposed To Multiple Liability Since There Exists More Than One Claim To The Stake.

Contrary to the statements of Menard, the husband of Dawn Shippee at the time of her death, Adam Shippee, has indeed asserted a claim to the stake. Through his attorney, Adam Shippee has filed an answer to the Complaint, and that answer constitutes a claim to the stake within the meaning of Rule 22.

The Policy itself does not set forth a specific procedure for filing a claim for death benefits, it merely instructs the claimant to contact the Prudential insurance agent. Furthermore,

the Policy does not define the term "claim." Notice requirements of life insurance policies are generally liberally construed so as to be satisfied by substantial compliance. 13A Couch, Couch on Insurance 2d, § 49:300 (Rev. ed. 1982). Courts have defined the term claim as "a challenging request, a demand of a right, a calling upon another for something due, a demand for benefits or payment, a privilege to something, a title to something in the possession of another …." Burlington County Abstract Company v. QMA Associates, Inc., 400 A.2d 1211, 214 (NJ 1979) quoting Lamberton v. Travelers Indem. Co., 325 A.2d 104, 107 (Del.Super.Ct. 1974), aff'd 346 A.2d 167 (Del.Sup.Ct. 1975).

Adam Shippee has filed an answer to the Complaint, and in his answer he has requested, among other things:

> That the Court Order that if Defendant, Thomas Menard, is disqualified pursuant to R.I. Gen. Laws § 33-1.1-11 *et seq*. then the estate of the insured would be entitled to the proceeds.
>
> That Adam Shippee be declared the surviving husband of the late insured and that he then be further awarded his statutory share of his late wife's Estate pursuant to R.I. Gen. Laws §33-1.1.-10, *et seq*.

Answer of Adam Shippee at p.2.

Since already existing "claims are such that the plaintiff is or may be exposed to double or multiple liability," Prudential's interpleader action is well-founded and Menard's motion is without merit and should be denied. Fed. R. Civ. P. 22(1). It is not for Prudential to determine whether the claims of Menard or Adam Shippee are meritorious. To support an interpleader action the adverse claims need only attain "a minimal threshold level of substantiality." Equitable Life Insurance Society of the United States v. Porter-Englehart, 867 F.2d 79, 84 (1st Cir. 1989), quoting 7 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, § 1704

(2nd ed. 1986) at 504 (footnote omitted in original). Here, the adverse claims asserted and anticipated have attained a minimal threshold level of substantiality; therefore, Menard's motion must be denied.

2. Even If There Were Only One Adverse Claim Pending Against The Stake, Prudential's Complaint For Intepleader Would Be Well-Founded.

It is established law that the purpose of an interpleader action under Rule 22 is to protect a disinterested stakeholder, such as Prudential, against double or multiple liability. That protection extends to both *potential* and actual claims. Ensley, 174 F.3d at 80. Put another way, the scope of Rule 22 interpleader extends to existing, as well as reasonably anticipated claims. Therefore, even if there is only one claim asserted against the stake at the time an interpleader action is instituted, that is of no moment if, as here, the disinterested stakeholder has a *bone fide* fear of additional adverse claims. Dunbar, 502 U.S at 511. The drafters' use of the phrase "*may be exposed*" in the Rule makes that abundantly clear. Fed. R. Civ. P. 22(1)(emphasis supplied). Here, there are already two adverse claims to the stake. Prudential has a real fear of incurring multiple liability, and that is not a risk it agreed to assume when it sold Menard the Policy insuring the life of Ms. Shippee. In his answer Adam Shippee clearly articulates an interest in the stake by asserting that he "be declared the surviving husband of the late insured and that he then be further awarded his statutory share of his late wife's Estate." Moreover, none of the other three minor defendants, who are all potential contingent beneficiaries, has expressly waived his or her right to the stake. The allegations of the Complaint have plainly cleared the "minimal threshold of substantiality" and the motion must be denied.

C. SINCE THE EXISTING AND ANTICIPATED CLAIMS TO THE STAKE SATISFY THE FIRST CIRCUIT'S MINIMUM THRESHOLD LEVEL OF SUBSTANTIALITY THIS ACTION IS NOT SUBJECT TO DISMISSAL.

1. The Slayer's Act Requires Neither A Conviction Nor An Indictment.

In his motion Menard asserts that since he has not yet been indicted or convicted of Ms. Shippee's murder, as the Policy's primary beneficiary he has an immediate and absolute right to the death benefits. Pltf's Mem. at 4-5. Menard misapprehends the Slayer's Act. Gen. Laws 1956, § 33-1.1-1 *et seq.* Unlike the slayer statutes adopted by other states, the Slayer's Act does not require that to bar the payment of funds the slayer must first be convicted of the murder. Compare Kan. Stat. Ann § 59-513 *et seq*. with R. I. Gen. Laws 1956, § 33-1.1-1 *et seq*. In fact, "[t]he rule requiring a conviction in order to bar the beneficiary is contrary to the general rule which is followed in all but a few of the jurisdictions in the United States." Harper v. Prudential Ins. Co. of Am., 233 Kan. 358, 364 (1983)(a person who is designated as the primary beneficiary in a policy of life insurance will be barred from recovering under the policy if he feloniously kills the insured regardless of whether he is actually convicted for the killing). Here, the term "Slayer" is defined as "any person who willfully and unlawfully takes or procures to be taken the life of another." R. I. Gen. Laws 1956, § 33-1.1-1. Therefore, notwithstanding Menard's assertions to the contrary, by its plain and unambiguous terms the Slayer's Act does not require that the "slayer" already be convicted of murder, charged with murder, or indicted for murder in order to be barred from receiving a benefit. Indeed, with regard to its construction, the Slayer's Act provides that it "shall be construed broadly in order to effect the policy of the state that no person shall be allowed to profit by his or her own wrong." R. I. Gen. Laws 1956, 3-1.1-15. In interpreting the term Slayer to potentially include not only persons convicted of murder, but also those under active investigation, and identified as primary suspects in murders, Prudential was

acting in a fashion consistent with the State's clearly articulated public policy as set forth in the Slayer's Act.

Prudential does not know whether Menard committed the murder of Ms. Shippee, though the Rhode Island State Police stated "Mr. Thomas Leo Menard DOB: 2/15/41 SS#513544535, is a suspect in the Homicide of his daughter Dawn Shippee." A true and accurate copy of Sergeant Kevin Hopkins' letter to Prudential dated May 8, 2003 is attached hereto as Exhibit "A."[5] Further, a reasonable inference can be drawn that the State Police had sufficient probable cause to suspect Menard's involvement in the murder to justify the issuance of a search warrant.[6] On March 9, 2006, when it last spoke to the State Police before sending the matter to outside counsel Prudential was informed that Menard was still a prime suspect in the case. Indeed, Menard's former legal counsel, John Bevilacqua, informed Prudential that the State Police considered Menard to be "the prime suspect" in the murder of Ms. Shippee. For his part, Menard has presented no evidence to the Court that he has been exonerated as a suspect in Ms. Shippee's murder, and indeed all of the evidence that Prudential has obtained in speaking with both the State Police and the Rhode Island Attorney General's Office confirms that indeed he has not been cleared as a suspect in that murder.

"It is immaterial whether the stakeholder believes that all claims against the fund are meritorious. Indeed, in the usual case, at least one of the claims will be very tenuous." Porter-

---

5 Because the Rhode Island State Police's written notice of its on-going investigation is integral to Menard's counter-claim, the Court may consider Sergeant Kevin Hopkins' letter in ruling on the motion to dismiss. Bedall v. State Street Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998).

6 A true and accurate copy of an article printed from www.turnto10.com dated March 21, 2003 is attached hereto as Exhibit "B." The Court may take judicial notice of this newspaper article under Rule 201 of the Federal Rules of Evidence. Ritter v. Hughes Aircraft Co., 58 F.3d 454, 458 (9th Cir. 1995)(court properly took judicial notice of layoffs at manufacturing facility as reported in newspaper).

Englehart, 867 F.2d at 84. Here, even putting aside the anticipated claims of the contingent beneficiaries, Prudential is in no position to determine whether Adam Shippee's claim against the life insurance proceeds is meritorious should Menard's claim ultimately be barred by the Slayer's Act. Under the circumstances, it would be unreasonable to expect an insurance company to undertake an independent murder investigation. It lacks the sufficient, dedicated full-time staff of investigatory personnel, the powers (e.g., subpoena and prosecutorial powers), and indeed the ability to reach conclusions which satisfy the mandate of a law like the Slayer's Act. Simply stated, and in contrast to factual issues involved in many other insurance claim cases (such as whether a person insured under a disability insurance policy is disabled), the question of whether a life insurance beneficiary has "[w]illfully and unlawfully take[n] or procure[d] to … take[] the life of another" does not lend itself to a private insurance company investigation. Moreover, such investigations could lead to a whole host of difficulties including allegations of obstruction of justice and witness tampering. Insurers like Prudential routinely and reasonably rely on the law enforcement agencies with the proper training, powers and tools to evaluate the sort of issues which this case presents. That is precisely what Prudential did in this instance.

2. Since It Arguably Has Received Written Notice Of The Killing By A Slayer, R. I. Gen. Laws § 33-1.1-12 Does Not Afford Prudential Sufficient Protection From Double Or Multiple Liability And Interpleader Is The Proper Solution.

The Slayer's Act contains a limited safe-harbor provision relating to payments made without notice. However, in view of the particular facts surround this claim, Prudential has no sure way of ascertaining whether it is protected by that provision. Section 33-1.1-12 provides in part that "[a]ny insurance company making payment according to the terms of its policy… shall not be subjected to additional liability by the terms of this chapter if such payment or

performance is made without written notice of the killing by a slayer … of circumstances tending to bring it within the provisions of this chapter." Here, Prudential has received written notice from the State Police that Menard is a suspect in the murder of Ms. Shippee. Further, each time Prudential has contacted either the State Police or the Attorney General's office it has been advised that Menard is a suspect in the murder and that the investigation is ongoing. Therefore it is altogether unclear whether the safe-harbor provision would shield Prudential from multiple liability. It is not difficult to imagine that whether Prudential received "written notice" under the statute may become a question of fact requiring a trial to resolve. <u>In re Estate of Thompson</u>, 99 Ill.App.3d 303, 55 Ill.Dec. 217, 426 426 N.E.2d 1 (1981)(whether insurer acted in good faith in paying claim after receiving notice of the involvement of the beneficiary in the death of the insured is a question of fact to be determined by the trial court). Prudential is not and should not be required to contend with such open-ended uncertainty. Rule 22 interpleader was specifically designed to remedy situations such as this where a disinterested stakeholder seeks protection from multiple liability relating to a dispute not of its making. Hence, Prudential's resort to Rule 22 in this instance is fully justified and Menard's motion must be denied.

D. <u>PRUDENTIAL HAS LIGITIMATE CONCERNS THAT IT MAY BE SUBJECT TO LITIGATION AND HELD LIABLE UNDER COMMON-LAW NEGLIGENCE PRINCIPLES; THEREFORE THE COMPLAINT MAY NOT BE DISMISSED</u>.

Prudential faces the real prospect of further litigation and multiple liability under common-law. In <u>Harper</u> v. <u>Prudential Ins. Co. of Am</u>., <u>supra</u>, Prudential paid the primary beneficiary Fenton the proceeds of its life insurance policy despite indication of the beneficiary's potential involvement in murdering the insured under Prudential's policy. Kansas' slayer statute required a conviction before the "slayer" could be barred from payment, and Prudential paid Fenton's claim well before his conviction. Nonetheless, when Fenton was convicted of the

murder nearly two and one half years later, the insured's children filed benefit claims and demanded payment. The court held that Prudential should have either delayed making payment or filed an interpleader action. Harper, 233 Kan. at 372. The Harp`er court held that a person who is designated as the primary beneficiary in a policy of life insurance will be barred under common-law from recovering an insurance policy's benefits if he feloniously kills the insured regardless of whether he is actually convicted for the killing. Id. at 367-68.[7] The Harper court ordered Prudential to pay the policy's death benefits, plus interest, a second time. Similarly, in Glass v. U.S., 506 F.2d 379 (10th Cir. 1974), the Tenth Circuit held that the life insurer could not avoid paying the contingent beneficiaries under circumstances where it had paid the primary beneficiary despite knowledge of her indictment for the insured's murder. The Glass court noted that the insurer could have avoided double payment by simply interpleading the policy's death benefits, as Prudential seeks to do here. Id. at 382. These cases support the proposition that an insurance carrier such as Prudential may be liable for negligently paying a primary beneficiary if that beneficiary is ultimately found to have murdered the insured. Moreover, inasmuch as "reasonableness" is the standard by which the insurer's conduct is measured, it can look forward to defending jury cases brought by contingent beneficiaries on the issue should it proceed to pay a claim without instituting an interpleader action. In this case, those possibilities represent a

---

[7] Accord Continental Bank and Trust Company v. Maag, 285 F.2d 558 (10th Cir. 1960)(state statute pertaining to convictions did not change the rule of public policy against allowing a beneficiary who kills the insured to recover the proceeds of the policy and a conviction was not required); Lofton v. Lofton, 26 N.C. App. 203, 215 S.E.2d 861 (1975)(slayer statute did not abrogate the common-law principle that a person should not be allowed to profit from his own wrong and the primary beneficiary could be barred from recovering the policy's proceeds despite the fact that he had not been convicted of the crime); Smith v. Todd, 155 S.C. 323, 152 S.E. 506 (1930)(that the primary beneficiary was not convicted for killing the insured because the beneficiary committed suicide thereafter was not a sufficient reason to entitle his estate to the policy's proceeds); Keels v. Atlantic Coast Line R. Co. *et al.*, 159 S.C. 520, 157 S.E. 834 (1931) (same).

"real and reasonable fear of multiple liability" on the part of Prudential that plainly justifies interpleader. Dunbar, 502 U.S. at 511.

E. MENARD OFFERS NEITHER AUTHORITY NOR JUSTIFICATION TO SUPPORT HIS MOTION.

Menard cites United States Fire Ins. Co. v. Asbestospray, Inc., 182 F.3d 201, 208 (3rd Cir. 1999) and Home Indemnity Co. v. Moore, 499 F.2d, 1205-06 (8th Cir. 1974) for the proposition that a court may decline to grant or stay consideration of interpleader relief notwithstanding that the criteria of Rule 22 are satisfied. Pl. Mem. at 6. Menard's reliance is misplaced. In Asbestospray the Third Circuit reversed an order of the District Court dismissing an interpleader action on the ground of latches. In that case the Third Circuit held, among other things, that the plaintiff insurers did not delay, either excusably or otherwise, in filing their interpleader during the period of time before the duty to defend and indemnify had been triggered. Id. at 208. Here, Menard has not even raised the affirmative defense of latches, nor even if he had could he demonstrate unreasonable delay and resulting prejudice. Ansis v. River Oaks Furniture, Inc., 105 F.3d 745, 757 (1st Cir. 1997)(the party asserting the defense bar must establish an unreasonable delay in bringing the action and prejudice).

The court's decision in Moore is equally inapposite. In that case the Eighth Circuit noted that courts have declined to grant interpleader relief, when litigation in another court may obviate the need for the equitable remedy of federal interpleader. Moore, 499 F.2d at 1206. In Moore, the Eighth Circuit affirmed the federal district court's dismissal of an interpleader action after determining that the issues set forth in the complaint could be fully resolved in connection with two previously filed state court proceedings involving the same parties. Here, there are no pending state court actions so the court's holding in Moore is largely beside the point.

After briefly addressing the plaintiff's burden in an interpleader action, Menard next turns to Skaling v. Aetna Ins. Co., 799 A.2d 997 (RI 2002) in support of the proposition that Prudential "cannot posit that Mr. Menard is the slayer." Pl. Mem. at 7. Suffice to say that neither the term "slayer" nor the phrase "Slayer's Act" are mentioned in Skaling. That decision's relevance to the issues presented in the instant matter are unclear. To the extent Menard cites Skaling in support of his claim that Prudential has failed to properly investigate his claim, it is well-settled that the adequacy of Prudential's claim investigation presents a question of fact for the jury. Id. at 1010. Thus, the Skaling case actually supports the plaintiff's position, not Menard's.

Passing quickly by Skaling, Menard next takes out of context a few sentences from Colonial Life & Accident Ins. Co. v. Heveder, 618 S.E. 39 (GA. 2005). Menard's reference to Haveder is glaringly misleading. Pl. Mem. at 8. In that case, the insurer which paid the primary beneficiary was discharged from any further liability by a Georgia statue appropriately titled "Payment discharges insurer."[8] Menard has not pointed to a similar Rhode Island statute which

---

[8] The statute at issue in Heveder provides as follows:

**§ 33-24-41. Payment discharges insurer**

> Whenever the proceeds of or payments under a life or accident and sickness insurance policy or annuity contract become payable in accordance with the terms of the policy or contract or the exercise of any right or privilege under the policy or contract and the insurer makes payment of the proceeds or payments in accordance with the terms of the policy or contract or in accordance with any written assignment of the policy or contract, the person then designated in the policy or contract or by the assignment as being entitled to the proceeds or payments, if legally competent, shall be entitled to receive the proceeds or payments and to give full acquittance for the proceeds or payments and the payments shall (continued…)

would effectively absolve Prudential of any further liability should it pay him the proceeds of the policy while he remains a suspect in the on-going murder investigation. Moreover, in Heveder the investigating law enforcement officials sent a letter to the insurer stating that the primary beneficiary was not a suspect in the murder. Id. at 378. Here, the Rhode Island State Police have done exactly the opposite.

## IV. CONCLUSION

For all of the foregoing reasons, Thomas L. Menard's motion to dismiss the Complaint must be denied.

Respectfully submitted,

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,
By its Attorneys,

/s/ Joseph M. Codega

Joseph M. Codega, R.I. Bar #3612
Edward P. O'Leary
Fitzhugh, Parker & Alvaro LLP
37 Sockanosset Cross Road
Cranston, RI 02920
(401) 941-3220

Dated: June 11, 2007

---

(…continued)
fully discharge the insurer from all claims under the policy or contract unless, before payment is made, the insurer has received at its home office written notice by or on behalf of some other person that the other person claims to be entitled to the payment or some interest in the policy or contract.

CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system and will be sent electronically to the registered participants as identified on the NEF and paper copies will be sent by first-class mail to those indicated as non-registered participants on June 11, 2007, as follows:

Fred T. Polacek
fred@fredpolaceklaw.com

Jean Alfred Boulanger
jab@cblaw.necoxmail.com

Richard C. Bicki
rbickiesq@aol.com

/s/ Joseph M. Codega