UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA<br>Plaintiff,<br>Defendant in Counterclaim,<br>v.<br><br>THOMAS L. MENARD<br>Defendant,<br>Plaintiff in Counterclaim,<br>and<br><br>ADAM SHIPPEE<br>Defendant,<br>and<br><br>KYLINA BRAGA,<br>BRANDON SHIPPEE,<br>DYLANA SHIPPEE<br>And DOES 1-5<br><br>Defendants. | CIVIL ACTION NO. 06-395T |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL FURTHER ANSWERS TO INTERROGATORIES BY DEFENDANT/PLAINTIFF-IN-COUNTERCLAIM THOMAS MENARD**

Pursuant to Rules 33 and 37 of the Federal Rules of Civil Procedure, Plaintiff/defendant-in-counterclaim, The Prudential Insurance Company of America ("Prudential") hereby submits the following memorandum in support of its Motion to Compel Further Answers to Interrogatories by Defendant/plaintiff-in-counterclaim Thomas Menard ("Menard").[1]

## I. FACTS AND PROCEDURAL BACKGROUND

The relevant facts and procedural history relating to this motion to compel are as follows.

[1] Prudential, by and through its undersigned counsel, hereby certifies that it has in good faith conferred with counsel for Menard in an effort to resolve the dispute without involving the Court, but these efforts have not resolved the basic disagreement between the parties.

Prudential issued a life insurance policy ("the Policy") insuring the life of Dawn Shippee. Ms. Shippee died while the Policy was in effect. Complaint ¶ 2. The Rhode Island State Police reported that the cause of death was blunt force trauma to the head and drowning.

Menard is Ms. Shippee's father as well as the Policy's primary beneficiary. He obtained the Policy and paid the premiums. Approximately four months after Ms. Shippee's death Menard submitted a claim form in which he requested the Policy's death benefits, and he enclosed with the claim a Death Certificate relating to Ms. Shippee. Complaint ¶¶ 9, 10. Since the Certificate identified the cause of Ms. Shippee's death as "Pending further studies," Prudential conducted an investigation. Complaint ¶ 10. During its investigation Prudential repeatedly contacted the Rhode Island law enforcement officials charged with investigating Ms. Shippee's death. On each occasion Prudential was informed that the death was considered a homicide, that the investigation was ongoing, and that Menard was considered a suspect in the homicide. Complaint ¶¶ 11, 12.

As a beneficiary of the Policy, if Menard's claim is disqualified owing to the operation of Rhode Island's slayer statute, R.I. Gen. Laws § 33-1.1-11 ("Slayer's Act"), then Menard is deemed to have predeceased Ms. Shippee and Ms. Shippee's heirs, who are the other defendants in this action, would have viable claims to the proceeds. Complaint ¶ 15.

Rule 22 of the Federal Rules of Civil Procedure allows disinterested stakeholders to deposit funds into a court's registry if the stakeholder is "or may be exposed to double or multiple liability." Since Prudential is concerned about the prospect of incurring double or multiple liability, it filed the Complaint and requested that the Court determine the correct person or persons to whom Prudential should pay the Policy's proceeds. Complaint ¶ 21. Thereafter, Menard filed an answer and counterclaim for breach of contract and bad faith. In his

counterclaim Menard alleges, among other things, that Prudential breached the terms of the Policy by delaying its payment of the proceeds. He further alleges that in delaying its payment of the proceeds Prudential acted in bad faith. Crossclaim ¶ 9.

Menard has moved to dismiss Prudential's Complaint, and in support of that motion he asserts in broad and sweeping fashion that "Prudential has not conducted a timely or adequate investigation of Mr. Menard's claim, has not submitted the results of its investigation, if any, to a cognitive evaluation and review to determine the lawful basis, if any, for denying the claim, and has not advised Mr. Menard of its findings and conclusions, other than stating his claim is under investigation."[2] Mem. in Supp. of Motion to Dismiss at 5. Menard then proceeds to characterize Prudential's interpleader action as "highly speculative" and "based on improper reference stacking." Id. at 7. He further states that "no competent or legitimate evidence exists that he is in fact the 'Slayer.'" Id. In his answers to Prudential's interrogatories Menard states that "Prudential has refused payment without a reasonable basis in fact or law for the denial." Answer to Interog. No. 4.[3]

Prudential now moves to compel further answers to interrogatories Nos. 2, 6, 8, 10, 11, 13, 17, 18, 19, 20, 21, 22, 23 and 24, on the grounds, as discussed more fully below, that Menard incorrectly raises relevance objections to numerous interrogatories and frequently asserts the attorney-client privilege where no such privilege applies, or even if applicable, has been waived in view of the counterclaim. Moreover, when Menard does answer, those answers are invariably

---

[2] Contrary to Menard's assertions, Prudential has never denied Menard's claim, it has merely delayed making its benefits determination until the State Police investigation of Menard in connection with the insured's death is concluded, or until the Court decides this interpleader action.

[3] A true and accurate copy of Menard's answers to Prudential's Interrogatories are attached hereto as Exhibit "C."

vague, ambiguous, evasive or otherwise unresponsive.

## II. ARGUMENT

### A. MENARD HAS FAILED TO SHOULDER HIS BURDEN OF DEMONSTRATING THAT THE INFORMATION PRUDENTIAL REQUESTS IS NOT DISCOVERABLE.

The scope of discoverable information is set forth in Fed. R. Civ. P. 26(b)(1). This section provides in relevant part:

> "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if information sought appears reasonably calculated to lead to the discovery of admissible evidence."

Early pronouncements of the U.S. Supreme Court have provided the touchstone for interpreting the discovery rules and a party's obligations thereunder. "'Discovery' is one of the working tools of the legal profession.... It seems clear and long has been recognized that discovery should provide a party access to anything that is evidence in his case." Hickman v. Taylor, 329 U.S. 495, 515 (1947) (Jackson, J., concurring). The Supreme Court has stated that "modern instruments of discovery serve a useful purpose…They together with pretrial procedures make a trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." United States v. Procter & Gamble Co., 356 U.S. 677, 682 (1958). Thus, "civil trials in the federal courts no longer need be carried on in the dark. The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial...The deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored

cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Id.* at 501, 507.

Consistent with the goal that discovery provide the parties with all relevant information, the party resisting production bears the burden of establishing lack of relevancy or undue burden. See Oleson v. Kmart Corp., 175 F.R.D. 560, 565 (D.Kan.1997) ("[t]he objecting party has the burden to substantiate its objections") (citing Peat, Marwick, Mitchell & Co. v. West, 748 F.2d 540 (10th Cir.1984), cert. dismissed, 469 U.S. 1199 (1985)); accord G-69 v. Degnan, 130 F.R.D. 326, 331 (D.N.J.1990); Flora v. Hamilton, 81 F.R.D. 576, 578 (M.D.N.C.1978); Alexander v. FBI, 192 F.R.D. 50, 53 (D.C.2000); Burns v. Imagine Films Entertainment, 164 F.R.D. 589, (W.D.N.Y.1996); National Beef Packing Co., L.P. v. Southern Pac. Lines, 1997 U.S. Dist. LEXIS 17793 (D.Kan.1997); Thompson v. Glenmede Trust Co., 1993 U.S. Dist. LEXIS 17070 (E.D.Pa.1993). The "mere statement by a party that the interrogatory was 'overly broad, burdensome, oppressive and **irrelevant' is not adequate** to voice a successful objection." St. Paul Reinsurance Co. v. Commer. Fin. Corp., 198 F.R.D. 508, 511-12 (N.D.Ia.2000) (emphasis added)(citing Josephs v. Harris Corp., 677 F.2d 985, 992 (3d Cir.1982) (quoting Roesberg v. Johns-Manville Corp., 85 F.R.D. 292, 296-97 (E.D.Pa.1980))). See also Oleson, 175 F.R.D. 560 at 565 ("[t]he litany of overly burdensome, oppressive, and irrelevant does not alone constitute a successful objection to a discovery request") (citation omitted). "On the contrary, the party resisting discovery '**must show specifically how ... each interrogatory is not relevant** or how each question is overly broad, burdensome or oppressive." ' Id. at 512 (emphasis added)(citing Josephs 677 F.2d at 992 (quoting Roesberg, 85 F.R.D. at 296-97)). Here, Menard has not met, nor indeed could he possibly hope to meet his burden of demonstrating that Prudential's

interrogatories are not relevant to either his counterclaims for breach of contract and bad faith, or to Prudential's legitimate and reasonable defenses to those counterclaims.

## B. BY FAILING TO OBJECT TO PRUDENTIAL'S INTERROGATORIES IN A TIMELY FASHION MENARD WAIVED ANY OBJECTIONS HE MAY HAVE HAD.

With regard to answers and objections to interrogatories, Fed. R. Civ. P. 33(b)(3) provides that "[t]he party upon whom the interrogatories have been served shall serve a copy of the answers, and objections if any, within 30 days after the service of the interrogatories. It is well settled that failure to serve a response in a timely manner (i.e. within 30 days of service) may constitute a waiver of all objections. Banks v. Office of Senate Sergeant-At-Arms, 222 F.R.D. 7, 21 (D.C.C. 2004); Jayne H. Lee, Inc. v. Flagstaff Indus. Corp., 173 F.R.D. 651, 653 (D. Md. 1997).

Here, on May 10, 2007 Prudential served its interrogatories on Menard by first class mail, facsimile transmission and electronic mail. A true and accurate copy of Prudential's Interrogatories to Menard, together with its covering letter to Menard's two attorneys is attached hereto as Exhibit "A." Pursuant to Rules 6 and 33 of the Federal Rules of Civil Procedure, Menard was required to serve his answers and objections on Prudential on or before June 12, 2007. Menard neither sought nor obtained an extension of time to serve his answers and objections. Prudential received Menard's answers to its interrogatories by facsimile transmission on June 15, 2007. Since Menard did not respond to Prudential's Interrogatories in a timely fashion, he has waived all objections. See generally, 12 Wright, Miller and Marcus, Federal Practice and Procedure: Civil 2d § 2173 (1994).

## C. PRUDENTIAL REQUESTS INFORMATION REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSABLE EVIDENCE.

Pursuant to Local Rule 37(a), each Prudential interrogatory, as well as the response made by Thomas Menard thereto, and the reasons why Prudential maintains that Menard's response is inadequate are set forth below.

**INTERROGATORY 2:** Did your attorney, John J. Bevilacqua, or any other attorneys, ever inform you that the Rhode Island State Police considered you "the number one suspect" in the death of your daughter, Dawn Shippee.

**ANSWER 2:** Defendant objects to Interrogatory #2 as it seeks information which is irrelevant, immaterial, unreasonable and vexatious, abusive, calculated to intimidate and harass, and not calculated to lead to the discovery of admissible evidence. Whether the State Police considered me to be a suspect in the death of my daughter is irrelevant given the contractual claim that forms the basis of this action. Prudential is limited to introducing evidence that it actually relied upon and communicated to me when it denied my claim and it may not seek to enhance its defense by seeking discovery of extraneous facts and circumstances it did not communicate to me when it refused payment.

Additional objection is made on the grounds that the interrogatory is designed and seeks to shift the burden of proof to Mr. Menard to establish that he was not the slayer of his daughter.

Any and all discussions with my attorneys are confidential and privileged communications and are covered by the attorney-client privilege.

**ARGUMENT:** Menard's objections are misplaced and his response is insufficient. It is well settled that discovery may generally be had of any non-privileged material which is relevant to the pending action and reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26. The permissible scope of discovery includes "any matter that bears on, or that reasonably could lead to another matter that could bear on, any issue that is or may be in the case." Hickman, 329 U.S. at 501. Discovery may be sought as to any information which relates to a claim or defense asserted by any party to the case, and should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of the action. Miller v. Doctor's Gen. Hosp., 76 F.R.D. 136, 138 (W.D. Okla.1977). Accordingly, either party may compel the other to "disgorge whatever facts he has in his possession not otherwise privileged and protected from discovery." Hickman,

*supra*, at 501.

Menard refuses to answer based on the attorney-client privilege. He bears the burden of establishing that the privilege applies to the communications at issue and has not been waived. See State of Maine v. United States Dep't of the Interior, 298 F.3d 60, 71 (1st Cir. 2002); United States v. Bollin, 264 F.3d 391, 412 (4th Cir. 2001). Menard must carry the devoir of persuasion here. In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.), 348 F.3d 16, 22 (1st Cir. 2003). The privilege is narrowly construed because it comes with substantial costs and stands as an obstacle of sorts to the search for truth. See United States v. Nixon, 418 U.S. 683, 709-10 (1974). The protection of the privilege extends only to communications and not to the facts contained in the communication. Upjohn Co. v. United States, 449 U.S. 383, 395-96 (1981). The privilege protects only those communications that are confidential and are made for the purpose of seeking or receiving legal advice. See Bollin, 264 F.3d at 412. When otherwise privileged communications are disclosed to a third party, the disclosure destroys the confidentiality upon which the privilege is premised. In re Keeper of Records, 348 F.3d at 412.

Here, Menard's former counsel, John J. Bevilacqua, told Prudential that he had spoken to the State Police and that based on that discussion he believed that Menard was the "number one suspect" in the murder of Ms. Shippee.[4] Prudential wants to know whether Mr. Bevilacqua told that to Menard as well. Since Mr. Bevilacqua made the same statement to a third-party, namely Prudential, it is not confidential. Further, what the State Police told Mr. Bevilacqua about Menard's status as a suspect is not confidential, and the fact that he forwarded that information to Menard, *vel non*, does not render the information a communication made for the

---

[4] It is Prudential's position that this statement is admissible under Rule 801(d)(2)(D) of the federal Rules of Evidence. See U.S. v. Harris, 914 F.2d 927, 931 (7th Cir. 1990).

purpose of seeking or receiving legal advice. Further, even if the requested information was privileged, once provided to Prudential the privilege was waived.

Menard also objects on relevance grounds. Since Menard is resisting discovery he bears the burden of establishing lack of relevancy. He must demonstrate how the information sought is not relevant to <u>any</u> claim or <u>defense</u>. Stated differently, it is not incumbent upon Prudential to affirmatively show the relevance of the information sought, rather, the burden of proof rests squarely with Menard. Nonetheless, Menard asserts that Prudential's interpleader is "highly speculative" and based on "improper reference stacking." The information sought by Prudential in this interrogatory is reasonably calculated to lead to the discovery of admissible evidence on those claims. Menard also asserts that "no competent or legitimate evidence exists that he is the Slayer," and the information sought by Prudential in this interrogatory is reasonably calculated to lead to the discovery of admissible evidence on that claim as well.

As a ground for refusing to answer this interrogatory Menard also claims that it seeks to shift the burden of proof to Menard to establish that he is not the slayer. Contrary to Menard's objection, in this interrogatory Prudential seeks information <u>to support its defense</u> to Menard's bad faith counterclaim to the effect that it did indeed have a good faith basis for delaying the payment of the Policy's death benefit.[5] <u>See Sedco Int'l S.A</u>. v. <u>Cory</u>, 683 F.2d 1201, 1206 (8th Cir. 1982)(privilege waived to the extent discovering party required information to defend against counterclaims).

The information Prudential seeks to elicit by and through this interrogatory is not privileged. Moreover, the information is relevant to both the interpleader action and to Menard's counterclaims for breach of contract and bad faith. Because Prudential is seeking non-privileged

information that is reasonably calculated to lead to the discovery of admissible evidence, Menard is obligated to respond to Interrogatory No. 2 in full.

**INTERROGATORY 6:** Identify each and every member of law enforcement that has requested, verbally or in writing, to speak with you concerning the death of Dawn Shippee, and identify the dates on which, the requests were made.

**ANSWER 6:** Defendant objects to Interrogatory #6 as it seeks information which is irrelevant, immaterial, unreasonable and vexatious, abusive, calculated to intimidate and harass, and not calculated to lead to the discovery of admissible evidence. Whether the State Police considered me to be a suspect in the death of my daughter is irrelevant given the contractual claim that forms the basis of this action. Prudential is limited to introducing evidence that it actually relied upon and communicated to me when it denied my claim and may not seek to enhance its defense by seeking discovery of extraneous facts and circumstances it did not communicate to me when it refused payment.

Additional objection is made on the grounds that the interrogatory is designed and seeks to shift the burden of proof to Mr. Menard to establish that he was not the slayer of his daughter.

Any and all discussions with my attorneys are confidential and, privileged communications and are covered by the attorney-client privilege.

**ARGUMENT:** Whether members of law enforcement asked to speak with either Menard or his agents during the course of their investigation of the murder of Ms. Shippee is plainly not confidential information. Therefore, Menard does not have a colorable claim of attorney-client privilege. Menard's relevance objection fairs no better. In his counterclaim Menard faults Prudential for its delay in paying the death benefit, yet to the extent Menard elected not to cooperate with the law enforcement community in its investigation of Ms. Shippee's murder, then Menard himself is clearly a cause of the delay. Significantly, through his then counsel Menard refused to meet with Prudential during its claims investigation. The dates sought by Prudential in this interrogatory relate to its defense of Menard's bad faith delay and breach of contract counterclaim. Moreover, Menard contends that "no competent or legitimate

---

[5] Menard raises this same objection on numerous occasions throughout his interrogatory answers, and Prudential's response is the same in each instance.

evidence exists that he is the Slayer." In this interrogatory Prudential seeks discovery regarding "the identity and location of persons having knowledge of" the competent and legitimate evidence that Menard either is or may be the slayer. Fed. R. Civ. P. 26(b)(1). That information could scarcely be more relevant the reasonable basis for the interpleader and to Prudential's defense of Menard's baseless breach of contract and bad faith counterclaims.

**INTERROGATORY 8:** Describe in full and complete detail any and all conversations you have had with the police concerning the death of Dawn Shippee, and identify the dates on which those conversations took place.

**ANSWER 8:** Defendant objects to Interrogatory #8 as it seeks information which is irrelevant, immaterial, unreasonable and vexatious, abusive, calculated to intimidate and harass, and not calculated to lead to the discovery of admissible evidence, Whether the State Police considered me to be a suspect in the death of my daughter is irrelevant given the contractual claim that forms the basis of this action. Prudential is limited to introducing evidence that it actually relied upon and communicated to me when it denied my claim and may rot seek to enhance its defense by seeking discovery of extraneous facts and circumstances it did not communicate to me when it refused payment.

Additional objection is made on the grounds that the interrogatory is designed and seeks to shift the burden of proof to Mr. Menard to establish that he was not the slayer of his daughter.

Any and all discussions with my attorneys are confidential and privileged communications and are covered by the attorney-client privilege.

**ARGUMENT:** See Prudential's argument relating to Interrogatory No. 6.

**INTERROGATORY 10:** Did you cooperate with the police in response to their request for interviews concerning the death of Dawn Shippee? If so, describe in full and complete detail the nature and extent of your cooperation.

**ANSWER 10:** Defendant objects to Interrogatory #10 as it seeks information which is irrelevant, immaterial, unreasonable and vexatious, abusive, calculated to intimidate and harass, and not calculated to lead to the discovery of admissible evidence. Whether the State Police considered me to be a suspect in the death of my daughter is irrelevant given the contractual claim that forms the basis of this action. Prudential is limited to introducing evidence that it actually relied upon and communicated to me when it denied my claim and may not seek to enhance its defense by seeking discovery of extraneous facts and circumstances it did not communicate to me when it refused payment.

Additional objection is made on the grounds that the interrogatory is designed and seeks to shift the burden of proof to Mr. Menard to establish that he was not the slayer of his daughter.

Any and all discussions with my attorneys are confidential and privileged communications and are covered by the attorney-client privilege.

**ARGUMENT:** See Prudential's argument relating to Interrogatory No. 6.

**<u>INTERROGATORY 11:</u>** Did you provide the police with an alibi concerning December 20, 2002, the date of Dawn Shippee's death? If so, please state in full and complete detail the alibi, your provided to the police.

**ANSWER 11:** Defendant objects to Interrogatory #11 as it seeks information, which is irrelevant, immaterial, unreasonable and vexatious, abusive, calculated to intimidate and harass, and not calculated to lead to the discovery of admissible evidence. Whether the State Police considered me to be a suspect in the death of my daughter is irrelevant given the contractual claim that forms the basis of this action. Prudential is limited to introducing evidence that it actually relied upon and communicated to me when it denied my claim and may not seek to enhance its defense by seeking discovery of extraneous facts and circumstances it did not communicate to me when it refused payment.

Additional objection is made on the grounds that the interrogatory is designed and seeks to shift the burden of proof to Mr. Menard to establish that he was not the slayer of his daughter.

Any and all discussions with my attorneys are confidential and privileged communications and are covered by the attorney-client privilege.

**ARGUMENT:** See Prudential's argument relating to Interrogatory No. 6.

**<u>INTERROGATORY 13:</u>** Describe in full and complete detail any and all conversations you have had with the Rhode Island Attorney general's Office, including but not limited to any conversations with Attorney William Ferland, concerning the death of Dawn Shippee, and identify the dates on which those conversations took place.

**ANSWER 13:** Defendant objects to Interrogatory #13 as it seeks information which is irrelevant, immaterial, unreasonable and vexatious, abusive, calculated to intimidate and harass, and not calculated to lead to the discovery of admissible evidence. Whether the State Police considered me to be a suspect in the death of my daughter is irrelevant given the contractual claim that forms the basis of this action. Prudential is limited to introducing evidence that it actually relied upon and communicated to me when it denied my claim and may not seek to enhance its defense by seeking discovery of extraneous facts and circumstances it did not communicate to me when it refused payment.

Additional objection is made on the grounds that the interrogatory is designed and seeks to shift the burden of proof to Mr. Menard to establish that he was not the slayer of his daughter.

Any and all discussions with my attorneys are confidential and privileged communications and are covered by the attorney-client privilege.

**ARGUMENT:** See Prudential's argument relating to Interrogatory No. 6.

**INTERROGATORY 17:** Have the police ever informed you, either verbally or in writing, that you are no longer a suspect in the death of Dawn Shippee, and if so, by whom were you informed?

**ANSWER 17:** Defendant objects to Interrogatory #17 as it seeks information which is irrelevant immaterial, unreasonable and vexatious, abusive, calculated to intimidate and harass, and not calculated to lead to the discovery of admissible evidence. Whether the State Police considered me to be a suspect in die death of my daughter is irrelevant given the contractual claim that forms the basis of this action. Prudential is limited to introducing evidence that it actually relied upon and communicated to me when it denied my claim and may not seek to enhance its defense by seeking discovery of extraneous facts and circumstances it did not communicate to me when it refused payment.

Additional objection is made on the grounds that the interrogatory is designed and seeks to shift the burden of proof to Mr. Menard to establish that he was not the slayer of his daughter.

Any and all discussions with my attorneys are confidential and privileged communications and are covered by the attorney-client privilege.

**ARGUMENT:** Menard once again incorrectly objects on the ground of attorney-client privilege and refuses to answer. Whether the police ever informed either Menard or his agents that he was no longer a suspect in the investigation into the murder of Dawn Shippee is plainly not confidential information. Therefore, Menard does not have a colorable objection based on attorney-client privilege.

Menard's relevance objection is equally without merit. To begin with, it is for Menard to demonstrate that the information sought is of no possible relevance to the claims and defenses at issue. Under the standard of review which governs the Court's review of this motion Prudential does not have an affirmative duty to prove relevance. Here, Menard alleges that Prudential's interpleader is "highly speculative"; however, if the police continue to view him as a suspect in the murder of Ms. Shippee, then that is at the very least some relevant evidence that the interpleader action represents Prudential's intention to be fair and reasonable to all concerned parties while protecting itself from double or multiple liability. Menard also alleges that "no

competent or legitimate evidence exists that he is the Slayer." If the police continue to view him as a suspect in Ms. Shippee's murder, then that casts doubt on Menard's assertion that no competent or legitimate evidence exists. Further, if Menard continues to be a suspect in the police's murder investigation, then that supports Prudential's decision to delay paying the Policy's death benefit. Menard claims that Prudential's delay was occasioned by its bad faith.

**INTERROGATORY 18:** Were you arrested in Florida on March 12, 2003, on gun charges, and if so, were you extradited back to the State of Rhode Island in connection with those charges?

**ANSWER 18:** Defendant objects to Interrogatory #18 as it seeks information which is irrelevant, immaterial, unreasonable and vexatious, abusive, calculated to intimidate and harass, and not calculated to lead to the discovery of admissible evidence. Prudential is limited to introducing evidence that it actually relied upon and communicated to me when it denied my claim and may not seek to enhance its defense by seeking discovery of extraneous facts and circumstances it did not communicate to me when it refused payment.

Additional objection is made on the grounds that the interrogatory is designed and seeks to shift the burden of proof to Mr. Menard to establish that he was not the slayer of his daughter.

Any and all discussions with my attorneys are confidential and privileged communications and are covered by the attorney-client privilege.

**ARGUMENT:** Menard incorrectly objects on the ground of attorney-client privilege and refuses to answer. Whether he was arrested in Florida as described in this interrogatory is a matter of pubic record. That information is clearly not confidential. Therefore, Menard does not have a colorable objection based on attorney-client privilege.

The information sought in this interrogatory is relevant. It is a matter of public record that following Ms. Shippee's murder, the police searched Menard's residence and discovered an unregistered hand gun, marijuana and a controlled substance. Several articles relating to Menard's arrest are attached hereto as Exhibit "B." Menard alleges that Prudential acted in bad faith in delaying its payment of the Policy's death benefit. The information Prudential seeks is plainly calculated to lead to the discovery of admissible evidence regarding Prudential's

interpleader action, as well as its defense to Menard's counterclaim for breach of contract and bad faith.

**<u>INTERROGATORY 19:</u>** Were you arraigned in March, 2003 in the Kent County (Rhode Island) District Court on drug and gun charges and, if so, was your bail set at fifty thousand ($50,000.00) dollars?

**ANSWER 19:** Defendant objects to Interrogatory #19 as it seeks information which is irrelevant, immaterial, unreasonable and vexatious, abusive, calculated to intimidate and harass, and not calculated to lead to the discovery of admissible evidence. Prudential, is limited to introducing evidence that it actually relied upon and communicated to me when it denied my claim and may not seek to enhance its defense by seeking discovery of extraneous facts and circumstances it did not communicate to me when it refused payment.

Additional objection is made on the grounds that the interrogatory is designed and seeks to shift the burden of proof to Mr. Menard to establish that he was not the slayer of his daughter.

Any and all discussions with in my attorneys are confidential and privileged communications and are covered by the attorney-client privilege.

**ARGUMENT:** See Prudential's argument relating to Interrogatory No. 18.

**<u>INTERROGATORY 20:</u>** Did the police seize your pickup truck in connection with their investigation of the death of Dawn Shippee or any other investigation, if so, please explain the facts and circumstances surrounding that seizure?

**ANSWER 20:** Defendant objects to Interrogatory #20 as it seeks information which, is irrelevant, immaterial, unreasonable and vexatious, abusive, calculated to intimidate and harass, and not calculated to lead to the discovery of admissible evidence, Prudential is limited to introducing evidence that it actually relied upon and communicated to me when it denied my claim and may not seek to enhance its defense by seeking discovery of extraneous facts and circumstances it did not communicate to me when it refused payment.

Additional objection is made on the grounds that the interrogatory is designed and seeks to shift the burden of proof to Mr. Menard to establish that he was not the slayer of his daughter.

Any and all discussions with my attorneys are confidential and privileged communications and are covered by the attorney-client privilege.

**ARGUMENT:** See Prudential's argument relating to Interrogatory No. 18.

**<u>INTERROGATORY 21:</u>** Did the police seize your 44 caliber snub-nose handgun in connection with their investigation of the death of Dawn Shippee or any other investigation, if

so, please explain the facts and circumstances surrounding that seizure?

**ANSWER 21:** Defendant objects to Interrogatory #21 as it seeks information which is irrelevant, immaterial, unreasonable and vexatious, abusive, calculated to intimidate and harass, and not calculated to lead to the discovery of admissible evidence. Whether the State Police considered me to be a suspect in the death of my daughter is irrelevant given the contractual claim that form s the basis of this action. Prudential is limited to introducing evidence that it actually relied upon and communicated to me when it denied my claim and may not seek to enhance its defense by seeking discovery of extraneous facts and circumstances it did not communicate to rue when it refused payment.

Additional objection is made on the grounds that the interrogatory is designed and seeks to shift the burden of proof to Mr. Menard to establish that he was not the slayer of his daughter.

Any and all discussions with my attorneys are confidential and privileged communications and are covered by the attorney-client privilege,

**ARGUMENT:** See Prudential's argument relating to Interrogatory No. 18.

**INTERROGATORY 22:** Did the police take a sample of your blood in connection with their investigation of the death of Dawn Shippee or any other investigation., if so, please explain in full and complete detail your understanding of why the police took that sample?

**ANSWER 22:** Defendant objects to Interrogatory #22 as it seeks information which is irrelevant, immaterial, unreasonable and vexatious, abusive, calculated to intimidate and harass, and not calculated to lead to the discovery of admissible evidence. Whether the State Police considered me to be a suspect in the death of my daughter is irrelevant given the contractual claim that forms the basis of this action, Prudential is limited to introducing evidence that it actually relied upon and communicated to me when it denied my claim, and may not seek to enhance its defense by seeking discovery of extraneous facts and circumstances it did not communicate to me when it refused payment.

Additional objection is made on the grounds that the interrogatory is designed and seeks to shift the burden of proof to Mr. Menard to establish that he was not the slayer of his daughter.

Any and all discussions with my attorneys are confidential and privileged communications and are covered by the attorney-client privilege.

**ARGUMENT:** See Prudential's argument relating to Interrogatory No. 18.

**INTERROGATORY 23:** Did the police take a sample of your DNA in connection with their investigation of the death of Dawn Shippee, if so, please explain in full and complete detail your understanding of why the police took that sample?

**ANSWER 23:** Defendant objects to Interrogatory #23 as it seeks information which is irrelevant, immaterial, unreasonable and vexatious, abusive, calculated to intimidate and harass,

and not calculated to lead to the discovery of admissible evidence. Whether the State Police considered me to be a suspect in the death of my daughter is irrelevant given the contractual claim that forms the basis of this action. Prudential is limited to introducing evidence that it actually relied upon and communicated to me when it denied my claim and may not seek to enhance its defense by seeking discovery of extraneous facts and circumstances it did not communicate to me when it refused payment,

Additional objection is made on the grounds that the interrogatory is designed and seeks to shift the burden of proof to Mr. Menard to establish that he was not the slayer of his daughter.

Any and all discussions with my attorneys are confidential and privileged communications and are covered by the attorney-client privilege.

**ARGUMENT:** See Prudential's argument relating to Interrogatory No. 18.

**INTERROGATORY 24:** Describe in full and complete detail any arguments, disagreements, quarrels, altercations, conflicts or confrontations of any kind or nature that you had with Dawn Shippee between Thursday December 26, 2002 and Sunday December 29, 2002 at 11:47 AM and identify any and all persons present during these incidents.

**ANSWER 24:** Defendant objects to Interrogatory #24 as it seeks information which is irrelevant, immaterial, unreasonable and vexatious, abusive, calculated to intimidate and harass, and not calculated to lead to the discovery of admissible evidence. Whether the State Police considered me to be a suspect in the death of my daughter is irrelevant given the contractual claim that forms the basis of this action. Prudential is limited to introducing evidence that it actually relied upon and communicated to me when it denied my claim and may not seek to enhance its defense by seeking discovery of extraneous facts and circumstances it did not communicate to me when it refused payment.

Additional objection is made on the grounds that the interrogatory is designed and seeks td shift the burden of proof to Mr. Menard to establish that he was not the slayer of his daughter.

Any and all discussions with my attorneys are confidential and privileged communications and are covered by the attorney-client privilege.

**ARGUMENT:** See Prudential's argument relating to Interrogatory No. 18.

CONCLUSION

For the foregoing reasons, Prudential requests that the Court grant its motion to compel and Order Thomas Menard to provide further answers within twenty (20) days.

Respectfully submitted,

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,
By its Attorneys,

*/s/ Joseph M. Codega*

Joseph M. Codega, R.I. Bar #3612
Edward P. O'Leary
Fitzhugh, Parker & Alvaro LLP
37 Sockanosset Cross Road
Cranston, RI 02920
(401) 941-3220

Dated: June 25, 2007

CERTIFICATE OF SERVICE

I, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the NEF on June 25, 2007 as follows:

Fred T. Polacek
fred@fredpolaceklaw.com

Jean Alfred Boulanger/
jab@cblaw.necoxmail.com

Richard C. Bicki
rbickiesq@aol.com

*/s/ Joseph M. Codega*