UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA<br><br>Plaintiff,<br>Defendant in Counterclaim,<br>v.<br><br>THOMAS L. MENARD<br><br>Defendant,<br>Plaintiff in Counterclaim,<br>and<br><br>ADAM SHIPPEE<br><br>Defendant,<br>and<br><br>KYLINA BRAGA,<br>BRANDON SHIPPEE,<br>DYLANA SHIPPEE<br>And DOES 1-5<br><br>Defendants. | ) | CIVIL ACTION NO. 06-395T |

**MEMORANDUM OF PRUDENTIAL INSURANCE COMPANY OF AMERICA IN SUPPORT OF OBJECTION TO THOMAS MENARD'S MOTION FOR PROTECTIVE ORDER**

Pursuant to Fed. R. Civ. P. 26(b)(1), plaintiff/defendant in counterclaim Prudential Insurance Company of America hereby submits this memorandum in support of its objection to defendant/plaintiff in counterclaim Thomas Menard's motion for protective order seeking to prevent Prudential from taking his deposition. In opposition to Menard's motion for protection order, Prudential states as follows.

I. FACTS

Prudential has filed a motion to compel Menard to supplement his answers to Prudential's interrogatories in this case and respectfully refers this Court to the papers submitted in support of that motion for its statement of facts

II. PROCEDURAL BACKGROUND

The Federal Rules of Civil Procedure permit disinterested stakeholders to deposit funds into a court's registry if the stakeholder is "or may be exposed to double or multiple liability." See Fed. R. Civ. P. 22. Since Prudential is concerned about the prospect of incurring double or multiple liability on the life insurance policy it issued to Menard insuring the life of murder victim Dawn Shippee, it filed a complaint for interpleader ("Complaint"). In the Complaint's Prudential requested that the Court determine the correct person or persons to whom Prudential should pay the Policy's proceeds. Complaint ¶ 21. Thereafter, Menard filed an answer and counterclaim for breach of contract and bad faith. In his counterclaim Menard alleges, *inter alia*, that Prudential breached the terms of the Policy by delaying the payment of benefits. He further alleges that in delaying its payment of benefits Prudential acted in bad faith. Crossclaim ¶ 9.

Menard has moved to dismiss Prudential's Complaint, and in support of that motion he asserts, among other things, that:

- "Prudential has failed to conduct a timely or adequate investigation of his claim, has not submitted the results of its investigation, if any, to a cognitive evaluation and review to determine the lawful basis, if any, for denying the claim;
- Prudential has not advised Menard of its findings and conclusions, other than stating his claim is under investigation. Menard Mem. in Support of Motion to Dismiss at 5.
- Prudential's interpleader action is "highly speculative" and "based on improper reference stacking." Menard Mem. at 7.
- "[N]o competent or legitimate evidence exists that he is in fact the 'Slayer.'" Id.

Further, in his answer to Prudential's fourth interrogatory Menard states, "Prudential has refused payment without a reasonable basis in fact or law for the denial." Menard's Answer to Prudential's Interrogatories are attached hereto as Exhibits "A."

On May 24, 2007 Prudential served a Notice of Video Deposition of Menard on all counsel of record. A true and accurate copy of that Notice of Video Deposition is attached hereto as Exhibit "B." Prudential's scheduled Menard's deposition for June 4, 2007. In his covering letter addressed to both of Menard's attorneys, the undersigned wrote "[i]f any of you have scheduling issues which need to be resolved, please contact me without delay." A true and accurate copy of counsel's cover letter is attached hereto as Exhibit "C."

On the afternoon of June 1st, less than one business day before Menard's scheduled deposition, the undersigned received a telephone call from Richard Bicki, in which Mr. Bicki stated that neither he nor Mr. Polacek would be available to attend the deposition. It is of note that during that telephone call Mr. Bicki did not object to the deposition on substantive grounds, he merely called to discuss rescheduling owing to purported conflicts in his agenda and that of Mr. Polacek. Though aggravated about the eleventh hour notice and the delay Prudential would be required to endure should it assent to Menard's last-minute request, the undersigned agreed to postpone the deposition and Mr. Bicki agreed to contact defense counsel by telephone on Monday, June 4th with a list of acceptable deposition dates.

Needless to say, June 4th came and went without a word from either Mr. Bicki or Mr. Polacek. Nonetheless, Prudential waited until the afternoon of Friday, June 8th before re-noticing Menard's deposition.[1] A true and accurate copy of the Re-Notice of Video Deposition is attached hereto as Exhibit "D." Prudential re-noticed the deposition for June 18, 2007. In his

---

[1] The Court has established August 1, 2007 as the date on which discovery closes in this matter.

covering letter addressed to Mr. Bicki the undersigned again stated "[i]f you have a scheduling conflict that needs to be addressed, please contact me without delay." A true and accurate copy of counsel's cover letter addressed to Mr. Bicki is attached hereto as Exhibit "E."

On the afternoon of Thursday June 14, 2007, less than two business days prior to Menard's re-noticed deposition the undersigned received a telephone call from Mr. Polacek in which Mr. Polacek stated that he intended to file a motion for protective order relating to the Menard deposition, and he requested Prudential's assent. He asked if Prudential would be willing to cancel Menard's deposition on the ground that the information sought was beyond the scope of discovery as set forth in Fed. R. Civ. P. 26(b)(1). Prudential would not agree to cancel the deposition and on Friday, June 15, 2007, the day before the deposition, Menard moved for a protective order.

Prudential now opposes Menard's motion for protective order on the grounds that, as discussed more fully below, the discovery it seeks by way of Menard's deposition is indeed reasonably calculated to lead to the discovery of admissible evidence, both with respect to its interpleader action as well as to Menard's counterclaims for breach of contract and bad faith. Moreover, the burden of proving "good cause" for the protective order rests squarely with Menard, and he has failed to demonstrate the particular and specific facts he must in order to establish such good cause.

## II. ARGUMENT

### A. MENARD HAS FAILED TO SHOULDER HIS BURDEN OF DEMONSTRATING "GOOD CAUSE" FOR THE PROTECTIVE ORDER HE SEEKS.

The scope of discoverable information is set forth in Fed. R. Civ. P. 26(b)(1), which Provides, in relevant part, that:

> "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending

> action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if information sought appears reasonably calculated to lead to the discovery of admissible evidence."

The U.S. Supreme Court has provided guidance for interpreting the discovery rules and a litigant's obligations thereunder. "'Discovery' is one of the working tools of the legal profession.... It seems clear and long has been recognized that discovery should provide a party access to anything that is evidence in his case." Hickman v. Taylor, 329 U.S. 495, 515 (1947) (Jackson, J., concurring). The Supreme Court has stated that "modern instruments of discovery serve a useful purpose…They together with pretrial procedures make a trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." United States v. Procter & Gamble Co., 356 U.S. 677, 682 (1958). Deposition sought by litigants may be freely taken under Rule 26(b)(1) so long as the information sought is not privileged and is relevant to the subject matter of the litigation. Grinnell Corp. v. Hackett, 70 F.R.D. 326, 333 (D.R.I. 1976)(showing that likelihood of harassment is 'more probable than not' is insufficient to warrant protective order absent concomitant showing that information sought is fully irrelevant and could have no possible bearing on the issues).

The Federal Rules of Evidence provide that "'[r]elevant evidence' means evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evi. 401. Relevance is defined broadly, and it is not ground for objection that the information sought will be inadmissible at the trial if information sought appears reasonably calculated to lead to the

discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). It is settled law in the First Circuit that a party seeking a protective order must demonstrate particular and specific facts to establish "good cause" for the order. Anderson v. Cryovac, Inc., 805 F.2d 1, 7 (1st Cir. 1986).

In accordance with Rule 26(b)(1), this Court should deny Menard's motion for protective order because, as will be shown below, there can be no doubt that the information sought by Prudential is relevant to this litigation under the broad standard outlined in the discovery rules. Grinnell, 70 F.R.D. at 332. Indeed, it is plaintiff's own allegations and version of the facts which is sufficient to demonstrate the absence of good cause for a protective order.

B. MENARD'S REQUEST THAT THE COURT PRECLUDE PRUDENTIAL FROM TAKING HIS DEPOSITION IS ENTIRELY UNSUPPORTED.

Menard has moved to dismiss Prudential's interpleader complaint and has filed a counterclaim for breach of contract and bad faith. Nonetheless, Menard has requested that the Court issue an order "that the disclosure or discovery not be had." Mem. in Supp. of P.O. at 3. Such motions are hardly ever granted. In fact, prohibiting the taking of depositions has accurately been described as "an extraordinary measure." Prozina Shipping Co., Ltd. v. Thirty-Four Automobiles, 179 F.R.D. 41, 48 (D. Mass. 1998)(denying motion for protective order seeking to prevent deposition, and inviting the party seeking discovery to submit bill for expenses and attorneys' fees in opposing motion). The moving party has a heavy burden of showing "extraordinary circumstances" based on "specific facts" that would justify such an order. See, e.g., Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir.1979); Investment Properties Int'l, Ltd. v. IOS, Ltd., 459 F.2d 705, 708 (2d Cir.1972); Bucher v. Richardson Hospital Authority, 160 F.R.D. 88, 92 (N.D.Tex.1994) (protective orders prohibiting depositions are "rarely granted," and then only if movant shows a "particular and compelling need" for such an order); Motsinger v. Flynt, 119 F.R.D. 373, 378 (M.D.N.C.1988) ("Absent a strong showing of

good cause and extraordinary circumstances, a court should not prohibit altogether the taking of a deposition."); Medlin v. Andrew, 113 F.R.D. 650, 653 (M.D.N.C.1987); Arthur Treacher's Franchisee Litigation, 92 F.R.D. 429, 437 (E.D.Pa.1981); Wright v. Patrolmen's Benev. Ass'n, 72 F.R.D. 161, 164 (S.D.N.Y.1976) (protective order barring deposition will not be granted on the grounds that information might be available from other sources).

Here, not surprisingly, Menard cites no case law in support of his request that the Court prevent Prudential from taking his deposition. His request is wholly inconsistent with the policies underlying the federal discovery rules, see Grinnell, 70 F.R.D. at 332, namely, that "the parties … obtain the fullest possible knowledge of the issues and facts before trial." Hickman, 329 U.S. at 501. Since Menard fails to point to any circumstances that would justify the issuance of a protective order, let alone any "extraordinary circumstances," the Court should reject any further attempts to block Prudential's legitimate discovery requests and thwart Menard's deposition.

C. MENARD HAS FAILED TO DEMONSTRATE GOOD CAUSE FOR LIMITING THE SCOPE OF HIS DEPOSITION.

After requesting the Court to prevent his deposition entirely, Menard also argues that the Court should order "certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters." Mem. in Supp. of P.O. at 3. Menard first requests that the Court order Prudential not to ask him any questions regarding whether the Rhode Island State Police considered him a suspect in the murder of Dawn Shippee. Mem. in Supp. of P. O. at 2. There is no basis for limiting the deposition as Menard requests. In this action Menard has alleged that Prudential's interpleader is "highly speculative" and he has moved to dismiss the Complaint on that ground. If the State Police informed Menard that he was indeed a suspect, and perhaps the number one suspect, that is relevant information within the meaning of Fed. R. Evi.

401 on the issue of whether Prudential's interpleader is "highly speculative" and "based on improper reference stacking" as Menard claims.

Menard next asks the Court to prevent Prudential from asking him questions about discussions he had with his legal counsel in an unrelated State gun and drug charges. Mem. in Supp. of P.O. at 3. First, the gun and drug charges brought by the State of Rhode Island are not unrelated. The police acquired an unregistered 44 caliber handgun, marijuana and a controlled substance at Menard's residence while executing a search warrant issued in connection with the murder of Dawn Shippee. Those items form the basis of the State gun and drug charges. While Prudential has no interest in the legal advice Menard's criminal defense lawyers provided to him in connection with the State gun and drug charges, whatever facts Menard is aware of relating to those charges do not automatically become cloaked in privilege simply because he relates them to his attorney. Upjohn, Co. v. United States, 449 U.S. 383, 395-96 (1981).

Moreover, the Sixth Amendment provides a shield for attorney-client privilege only in criminal proceedings, upon the termination of those proceedings and initiation of a civil action putting the privilege at issue, that constitutional privilege ends. Greater Newburyport Clamshell Alliance v. Public Service Co. of N.H., 838 F.2d 13, (1st Cir. 1988). Here, the State proceedings against Menard on gun and drug charges have concluded, and Menard has waived any attorney client privilege he may have had to the extent that the information could be used by Prudential to rebut the breach of contract and bad faith claims that Menard has filed against Prudential. In the seminal case of Sedco Int'l S.A. v. Cory, 683 F.2d 1201, 1206 (8th Cir. 1982), the Eighth Circuit held that a defendant-counterclaimant by asserting a fraudulent misrepresentation claim waived the attorney-client privilege as to conversations that could be used by the plaintiff, defendant-in-counterclaim, to rebut the elements of the counterclaim. As in Sedco, the privilege being

invoked by Menard is not constitutionally protected. Greater Newburyport, 838 F.2d at 19. The liberal federal policy favoring discovery is of substantially greater relative weight where the party invokes the privilege in a civil rather than a criminal case. Id. at 20. While Prudential does not intend to inquire of Menard regarding the advice given by his attorney in connection with the "state gun and drug charges," Menard has the option of invoking the attorney-client privilege during his deposition in the event he believes that has become necessary.

Menard next requests that the Court order Prudential not to ask him about discussions he had with the State Police during their investigation of him in connection with the murder of Dawn Shippee. Menard claims that Prudential acted in bad faith in delaying its payment of the policy's death benefit and that its interpleader action is highly speculative. Prudential is entitled to take discovery to defend itself against those baseless claims. That the State Police are involved in a serious ongoing investigation of Menard is relevant evidence that Prudential's interpleader is well-founded and Menard's counterclaim is not.

Menard next objects to Prudential's questioning him about the alibi he provided, *vel non*, to the State Police. This objection is equally baseless. Menard has filed a bad faith claim against Prudential alleging that Prudential purposefully delayed paying him the Policy's proceeds. For its part Prudential maintains that the murder investigation in which Menard was a suspect caused the delay. To the extent Menard was unwilling or unable to provide an alibi, Menard himself caused or contributed to the delay.

Menard objects to questions relating to his discussions with the Rhode Island Attorney General's office about the investigation of the murder of Dawn Shippee. The reasons Prudential has provided above apply with equal force here. He claims that Prudential's interpleader complaint is highly speculative. If the Rhode Island Attorney General's office is investigating

him, one could argue that it is not. He also states that there is no competent or legitimate evidence that he committed the murder. Again, if the Rhode Island Attorney General's Office is investigating him one could infer that there is competent and legitimate evidence. Further, Menard refused to meet with Prudential during its claim investigation. If he responded in a similar fashion to the State Police and the Attorney General's Office, then he caused or contributed to the delay in Prudential's resolution of this claim.

Lastly, Menard asks the Court to issue an order precluding Prudential from asking him questions about forensic testing performed by the police in connection with the investigation of the murder of Dawn Shippee. He wants to prevent Prudential from asking questions about testing done on his hand gun and a pickup truck, as well as the testing performed on blood and DNA samples taken from Menard. In his counterclaim Menard is seeking compensatory damages, as well as punitive damages from Prudential on the ground that it delayed paying the policy's death benefit when there was no "competent or legitimate" evidence that he murdered Dawn Shippee. In defense of that claim Prudential is entitled to argue that sufficient evidence existed in order to justify the search of his home as well as the forensic tests noted above. He also claims that the interpleader is "highly speculative" and based on "improper reference stacking." The police investigation tends to show that Prudential's concerns about incurring double or multiple liability are neither highly speculative nor based on "improper reference stacking," whatever that may be.

Under the federal discovery rules Prudential is fully entitled to develop relevant and non-privileged information in support of its interpleader claim, as well as in support of its defenses to Menard's counterclaims for breach of contract and bad faith. "Given the cavalier nature of the plaintiff's motion … without any serious attempt to offer particular facts in its support"

Prudential requests that the Court issue an order pursuant to Rule 37(a)(4) awarding it the reasonable expenses and attorneys' fees it has incurred in opposing the motion for protective order. Prozina, 179 F.R.D. at 49.

## CONCLUSION

For all of the foregoing reasons, Prudential requests that the Court deny Menard's motion for a protective order seeking to prevent Prudential from taking his deposition.

Respectfully submitted,

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,
By its Attorneys,

/s/ Joseph M. Codega
Joseph M. Codega, R.I. Bar #3612
Edward P. O'Leary, pro hac vici
Fitzhugh, Parker & Alvaro LLP
37 Sockanosset Cross Road
Cranston, RI 02920
Telephone: (401) 941-3220

Dated: June 25, 2007

CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system and will be sent electronically to the registered participants as identified on the NEF and paper copies will be sent by first-class mail to those indicated as non-registered participants on June 25, 2007, as follows:

Fred T. Polacek
fred@fredpolaceklaw.com

Jean Alfred Boulanger/
jab@cblaw.necoxmail.com

Richard C. Bicki
rbickiesq@aol.com

/s/ Joseph M. Codega