**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **THE PRUDENTIAL INSURANCE COMPANY OF AMERICA**<br>**Plaintiff.**<br>**Defendant in Counterclaim**<br>**V.**<br>**THOMAS L. MENARD**<br>**Defendant.**<br>**Plaintiff in Counterclaim**<br>**V.**<br>**ADAM SHIPPEE**<br>**Defendant.**<br>**And**<br>**KYLINA BRAGA, BRANDON SHIPPEE DYLANA SHIPPEE, and DOES 1-5**<br>**Defendants.** | **CIVIL ACTION NO. 1:06-cv-00395-T-DLM** |

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF THE PRUDENTIAL INSURANCE COMPANY OF AMERICA'S MOTION FOR APPOINTMENT OF GUARDIAN AD LITEM**

As directed by the Court at the Status Conference conducted on September 25, 2007, the plaintiff, The Prudential Insurance Company of America ("Prudential"), hereby files this supplemental memorandum in support of Prudential's Motion for Appointment of Guardian Ad Litem, which was filed on May 24, 2007 and is unopposed. As specifically directed by the Court, this supplemental memorandum addresses the issue of payment of the guardian ad litem's attorney's fees in the event one is appointed.

## I. FACTS AND PROCEDURAL BACKGROUND

Prudential issued a life insurance policy ("the Policy") insuring the life of Dawn Shippee ("the decedent"). The decedent died while the Policy was in effect. Complaint ¶2. The Rhode Island State Police reported the cause of death as blunt force trauma to the head and drowning.

Menard is the decedent's father and the primary beneficiary under the Policy. Menard obtained the Policy and paid the premiums. Approximately four months after the decedent's death, Menard submitted a claim form in which he requested the Policy's death benefits and he enclosed with the claim the decedent's Death Certificate. Complaint ¶¶9 – 10. The Death Certificate identified the cause of the decedent's death as, "pending further studies." Consequently, Prudential conducted its own investigation. Complaint ¶10. During its investigation, Prudential repeatedly contacted the Rhode Island law enforcement officials charged with investigating the decedent's death. On each occasion, Prudential was informed that the decedent's death was considered a homicide, that the investigation was ongoing, and that Menard was considered a suspect in the decedent's homicide. Complaint ¶11 – 12.

In light of Menard being considered a suspect in the decedent's homicide, his claims for benefits under the Policy may potentially be disqualified by operation of R.I. GEN. LAWS § 33-1.1-11 ("Slayer's Act"). Pursuant to the Slayer's Act, if Menard is found to be responsible for the decedent's homicide, he is deemed to have predeceased the decedent and as a result, the decedent's heirs, who are the other Defendants in this action, would have viable claims to the proceeds of the Policy. Complaint ¶15.

Rule 22 of the Federal Rules of Civil Procedure allows disinterested stakeholders to deposit funds into a court's registry if the stakeholder is "or may be exposed to double or multiple liability." Since Prudential was concerned about the prospect of incurring double or

multiple liability, it filed the Complaint and requested that the Court determine the correct persons or persons to whom Prudential should pay the Policy's proceeds. Complaint ¶21. Shortly after Prudential filed its Complaint, Menard filed his Answer and Counterclaim for breach of contract and bad faith. In his Counterclaim, Menard alleges, inter alia, that Prudential breached the terms of the Policy by delaying its payment of the proceeds. Menard further alleges that by delaying the payment of the proceeds, Prudential acted in bad faith. Counterclaim ¶9.

On May 7, 2007, Prudential filed a motion to deposit the insurance proceeds with the Court's registry and thereby be discharged from liability with respect to the policy proceeds. Menard did not object to Prudential's motion to deposit funds; however, on May 24, 2007, Menard filed a motion to dismiss the interpleader on the grounds that interpleader relief was improper because no adverse claims had been filed with respect to the insurance proceeds and Prudential was not exposed to double or multiple liability. On July 18, 2007, the Court denied Menard's motion to dismiss and granted Prudential's motion to deposit funds. Specifically, the Court ordered that Prudential is discharged from any further obligation with respect to the payment of the policy proceeds. The Court, however, further ordered that Prudential is not discharged from any potential liability for the bad faith counterclaim nor is Prudential discharged from any potential financial liability as to who may be responsible for the payment of any guardian ad litem fees in the event that a guardian or guardians are appointed.

## II. GENERAL PRINCIPLES REGARDING ATTORNEY'S FEES IN INTERPLEADER ACTIONS

Rule 22 of The Federal Rules of Civil Procedure, which governs interpleader actions, is silent as to the court's authority to grant attorney's fees. It is widely recognized, however, that

courts are empowered to award attorney's fees pursuant to their authority under the interpleader statute, which provides that the district court may "make all appropriate orders to enforce its judgment." 28 U.S.C. § 2361; see CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1719 (3d ed. 2001) ("A federal court has discretion to award costs and counsel fees to the stakeholder in an interpleader action, whether brought under Rule 22 or the interpleader statute, whenever it is fair and equitable to do so.") see also Hunter v. Fed. Life Ins. Co., 111 F.2d 551, 557 (8th Cir. 1940) (affirming district court's decision in an interpleader action to award attorney's fees to the guardian ad litem).

The general rule, which is followed in the First Circuit, is that attorney's fees are awarded in interpleader actions "to compensate a totally disinterested stakeholder who had been, by reason of the possession of the fund, subjected to conflicting claims through no fault of its own." Ferber Co. v. Ondrick ,310 F.2d 462, 467 (1st Cir. 1962); see also Septembertide Publ'g, B.V. v. Stein & Day, Inc., 884 F.2d 675, 683 (2d Cir. 1989) ("[A] disinterested stakeholder who asserts interpleader is entitled to be awarded costs and attorney's fees.").

In some instances, however, courts have used their discretion to exclude insurance companies from the general "disinterested stakeholder" rule. "The test is not satisfied if the stakeholder has contributed to the need for interpleader by acting in bad faith or by unduly delaying in seeking relief." CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1719 (3d ed. 2001); citing Companion Life Ins. Co. v. Schaffer, 442 F. Supp. 826 (S.D.N.Y. 1977). Some courts have also awarded a reduced amount of attorney's fees to avoid an inappropriate depletion of the fund that is the subject of preservation through interpleader. Tr. of the Directors Guild of America-Producer Pension Benefits Plans v. Tise, 234 F.3d 415, 426 (9th Cir. 2000) (affirming district court's decision to

award reduced attorney's fees, and recognizing that "there is an important policy interest in seeing that the fee award does not deplete the fund at the expense of the party who is ultimately deemed entitled to it.").

Courts may also defer their decision on attorney's fees until the interpleader has been fully adjudicated. Pa. Fire Ins. Co. v. Am. Airlines, Inc., 184 F. Supp. 145 (E.D.N.Y. 1960) (deferring decision on attorney's fees in interpleader action until later stages of the proceeding); United Benefit Life Ins. Co. v. Katz, 155 F. Supp. 391, 394 (E.D.Pa. 1957) (deferring determination on costs and attorney's fees in interpleader action until after trial because "[a]fter a trial the court will be in a better position than it now is to determine whether or not there is real substance to the claim of [one of the competing claimants] to the proceeds of policy No. 1,203,705 and what equities will require as to (1) the payment of attorney's fees (2) costs, and (3) interest on the sum due under the policy."); see also CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1719 (3d ed. 2001) ("When the court is in doubt as to the proper amount to award, or whether to make any award, it may defer its decision until the contest between the claimants has been determined and the fund is ready to be distributed.").

## III. ARGUMENT

The Court clearly has the discretion to order that a guardian ad litem's attorney's fees shall be paid by deducting such fees from the stake. See Hunter, 111 F.2d at 557 (affirming district court's decision to award attorney's fees to guardian ad litem by having such fees deducted from the fund, and concluding that "[i]t is not suggested how [the guardian ad litem's] could have been dispensed with or how he could be compensated otherwise than out of the fund deposited by the plaintiff."). That scenario, however, is different than a court ordering a

stakeholder to pay a guardian ad litem's attorney's fees. Indeed, Prudential has not found any cases that support the proposition that a stakeholder may be ordered to pay a guardian ad litem's attorney's fees in an interpleader action, even if the court found that the stakeholder acted in bad faith or unduly delayed in seeking relief, which is not the case here. While there is authority that a stakeholder may not be entitled to its own attorney's fees when the stakeholder acted in bad faith or unduly delayed in seeking relief, that scenario is distinguishable from a stakeholder being ordered to pay the attorney's fees for a guardian ad litem.

All parties agree that the appointment of a guardian ad litem is necessary for the case to move forward. The Court should therefore order that the guardian's fees are to be paid at the conclusion of the case, subject to the guardian ad litem filing a motion for attorney's fees in accordance with LR cv 54.1, and subject to the Court's granting of that motion.

Courts are empowered to "make all appropriate orders to enforce its judgment." 28 U.S.C. § 2361. The proper time for awarding attorney's fees and for determining the amount of such fees, is thus after the Court has rendered judgment. Furthermore, ordering that the guardian's fees are to be paid at the conclusion of the case would be consistent with R.I. GEN. LAWS 9-14-25 (2007), which provides that a reasonable sum for expenses and counsel fees may "be paid out of the estate or fund in the hands of the complainant concerning which estate or fund the construction is asked." See In re Eifrig, 2007 R.I. Lexis 117 (R.I. Super. Ct. 2007) (Gibney, J.) (granting in part motion for attorney's fees and concluding that "[i]t is well within the authority of the trial justice to make an attorneys fee award determination after considering the circumstances of the case" and "[i]n considering such circumstances, the trial justice is in the unique position of observing the attorneys requesting the fees and is better able to judge the merits of a particular request.") (copy attached hereto as Exhibit "A").

Because there is no judgment, no determination of a prevailing party and no motion for attorney's fees, this case is not ripe for the Court to order a party to pay attorney's fees. Pursuant to Fed. R. Civ. P. 54, "claims for attorney's fees shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial." Unless otherwise provided by statute or order of the court, the motion must be filed no later than 14 days after entry of judgment. Fed. R. Civ. P. 54(d)(2)(B). There has been no entry of judgment in this case and no party has filed any motion for costs or attorney's fees. Therefore, this Court should not order Prudential, or any other party, to pay for the guardian ad litem's attorney's fees.

In the event that the Court is inclined to order payment of the guardian ad litem's attorney's fees now, the only proper source for the payment of such fees is the stake. There is no support in the case law for ordering a stakeholder to pay a guardian ad litem's fees.

## IV. CONCLUSION

This Court should grant Prudential's motion for appointment of guardian ad litem and order that the guardian ad litem's attorney's fees will be paid upon the conclusion of the case, subject to the guardian ad litem filing a motion for attorney's fees in accordance with LR cv 54.1, and subject to the Court's granting of that motion. In the alternative, the Court should order that the guardian ad litem's attorney's fees shall be paid by deducting such fees from the stake.

Dated: October 9, 2007

THE PLAINTIFF/COUNTERCLAIM DEFENDANT:

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA

/s/Mitchell R. Edwards
Mitchell R. Edwards (#6942)
Hinckley, Allen & Snyder, LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903-2393
Telephone: 401-274-2000
Facsimile: 401-277-9600
Email: medwards@haslaw.com

and

Ben A. Solnit (admitted Pro Hac Vice)
Robert C. Hinton (admitted Pro Hac Vice)
Tyler Cooper & Alcorn, LLP
555 Long Wharf Drive, 8th Floor
P.O. Box 1936
New Haven, CT 06509-0906
Telephone: 203-784-8200
Facsimile: 203-777-1811
Email: bsolnit@tylercooper.com
Email: rhinton@tylercooper.com

# EXHIBIT "A"

15 of 15 DOCUMENTS

**IN RE LAURETTE BORDUAS EIFRIG**

**PC/06-3872, PP/07-1529**

**SUPERIOR COURT OF RHODE ISLAND, PROVIDENCE**

***2007 R.I. Super. LEXIS 117***

**August 10, 2007, Filed**

**JUDGES:** [*1] GIBNEY, J.

**OPINION BY:** GIBNEY

**OPINION**

***AMENDED DECISION***

***GIBNEY, J.,*** On June 22, 2007, the Court issued a Decision appointing Paula Cuculo, Esquire (Attorney Cuculo) as Guardian of the Person and of the Estate of ninety-year old Laurette Borduas Eifrig (Mrs. Eifrig). Counsel now seek attorneys' fees from Mrs. Eifrig's Estate. Jurisdiction is pursuant to chapter 15 of Title 33.

***Facts and Travel***

Most of the facts of this case may be found in the Court's June 22, 2007 Decision; consequently, the Court need not detail them here. *See In re: Laurette Borduas Eifrig In re: Laurette Borduas Eifrig, 2007 R.I. Super. LEXIS 86* (*Eifrig I*). However, that Decision left unanswered certain pending matters, including a Motion to Remove Mrs. Eifrig's daughter Francine Ardito (Francine) as Co-Trustee of her mother's Trust; a Motion to Adjudge Francine in Contempt; and, the instant Petitions for Attorneys Fees.

On June 22, 2007, the same day the Court issued *Eifrig I*, Francine filed an entry of appearance, *pro se*. She requested a minimum nine-week continuance "in order to review all documents and transcripts and to prepare for the cases now pending in Rhode Island and Virginia." Also on the same day, Francine, through Virginia [*2] counsel James Philip Head, Esquire (Attorney Head), filed a Verified Complaint in Fairfax, Virginia, seeking the removal of her mother as Co-Trustee, as well as the release of the Trust funds. She alleged that the Rhode Island Superior Court did not have jurisdiction over the Trust because neither she nor her mother had appeared before this Court in their capacities as Co-Trustees.

After a hearing on June 26, 2007, the Court granted a motion filed by Mrs. Eifrig's Attorney, Richard A. Boren, (Attorney Boren), to remove Francine as Co-Trustee, and to appoint Attorney Cuculo as Co-Trustee in her stead. The Court also ordered Attorney Cuculo to revoke Francine's Durable Power of Attorney. Francine was notified about the hearing, but failed to appear. On Francine's behalf, Attorney Mastronardi objected to the Motion.

On June 27, 2007, Francine sent e-mails to Smith Barney and Resource Bank alleging that this Court did not have jurisdiction over the Trust, and that the banks had no right to pay any monies to Attorney Cuculo on behalf of Mrs. Eifrig. On June 28, 2007, Smith Barney informed Francine that it intended to abide by this Court's orders. On June 29, 2007, Attorney Cuculo was served [*3] with a Summons, as well as the June 22, 2007 Verified Complaint filed in the Fairfax Circuit Court.

Thereafter, Attorney Boren filed a combined: (1) Emergency Motion to Unfreeze Sufficient Funds to Defend the Petition to Remove Mrs. Eifrig as Co-Trustee and to Release all Trust Funds to Francine; (2) Motion for Sanctions against Francine; (3) Motion to Adjudge Francine in Willful Contempt; (4) Motion for Assessment of Attorney's Fees; and (5) Motion to Suspend Francine's Visitation. He additionally sought the Court to assess the fees against Francine for requiring Mrs. Eifrig to defend the actions in Virginia. Attorney Boren also filed a Motion to join Smith Barney as a Party Defendant in the within Civil Action. Meanwhile, Attorney Mastronardi retained Joseph A. Kelly, Esquire (Attorney Kelly), to represent her on a renewed Motion to Withdraw.

On July 16, 2007, the Court conducted a hearing on the Motions. Francine failed to appear. Attorney Mastronardi's Motion to Withdraw was granted after Attorney Kelly assured the Court that Francine had been advised of the obligations of proceeding *pro se*.. All other matters

were held in abeyance until a show cause hearing could be conducted [*4] to determine why Francine should not be held in contempt.

On August 7, 2007, the matter reconvened. Francine failed to appear. Attorney Boren informed the Court that various developments had taken place since the previous hearing. On July 24, 2007, Attorney Boren, Attorney Cuculo, Dr. Andrew Rosenweig, Geriatric Care Manager Dale Adams, Mrs. Eifrig, and a stenographer all met at the Capital Ridge Assisted Living Center. After ascertaining that Mrs. Eifrig understood what was occurring, and that she freely, knowingly and voluntarily wished to amend her Trust, Mrs. Eifrig executed a *Fourth Amendment* to her Trust. The effect of the *Fourth Amendment* was as follows: Mrs. Eifrig and Attorney Cuculo became Co-Trustees; upon Mrs. Eifrig's death, the Trust would terminate and the remaining corpus, if any, would be distributed to Francine, to Mrs. Eifrig's other daughter Suzette Eifrig Gephard (Suzette), and to Francine's daughter, Alicea Rose Ardito (Alicea) in equal parts; and the Trust would be governed by Rhode Island law.

On July 27, 2007, Mrs. Eifrig's Virginia counsel filed Motions to Dismiss the pending actions in Virginia. The Motion to Dismiss in the Fairfax action was based upon lack [*5] of subject matter jurisdiction. Likewise, the basis for the Motion to Dismiss in the interpleader action also was based upon lack of subject matter jurisdiction, as well as pursuant to the Uniform Foreign Judgments Act.

On July 30, 2007, Attorney Head contacted Attorney Boren and informed him that he wished to discuss a "Global Settlement Agreement" (the Agreement) with a view to dismissing all of the pending actions in both Virginia and Rhode Island. Specifically, the Fairfax action and the interpleader action would be dismissed with prejudice. A stipulation would be entered in the interpleader action stating that the Trust funds would be delivered to Attorney Cuculo, in her capacity as Co-Trustee. Furthermore, the Motions for Sanctions, and the Motion to Adjudge Francine in Contempt in the instant matter, would be withdrawn. The parties would agree that the Court retains jurisdiction over attorneys' fees and the guardianship issue.

So far, however, the parties have been unable to reach an agreement over the issue of attorneys' fees. Attorney Boren stated that he would be willing to have the Trust pay all attorneys fees owed to Francine's counsel. Attorney Cuculo and Suzette's counsel, [*6] James McCormick, Esquire (Attorney McCormick), however, believe that Attorney Mastronardi's fee should be reduced to reflect only the work that she performed for Francine in her capacity as Co-Trustee, but not for work that she had performed for Francine in her personal capacity. [1]

1 Francine has insisted that she brought this case in her personal capacity, rather than in her capacity as Co-Trustee; however, all current Rhode Island counsel assert that, in fact, she did come before the Court in her capacity as Co-Trustee of her mother's Trust.

At the conclusion of the August 7, 2007 hearing, the Court took the matter under advisement and adjourned the hearing. Additional facts will be supplied as needed in the analysis portion of this Decision.

***Standard of Review***

There is no question that "[i]t is well within the authority of the trial justice to make an attorneys fees award determination after considering the circumstances of the case." *Keystone Elevator Co., Inc. v. Johnson & Wales University, 850 A.2d 912, 920 (R.I. 2004)* (citing *Schroff, Inc. v. Taylor-Peterson, 732 A.2d 719, 721 (R.I. 1999)* (per curiam)). In considering such circumstances, "[t]he trial justice is in the unique [*7] position of observing the attorneys requesting the fees and is better able to judge the merits of a particular request." *Keystone Elevator Co., Inc., 732 A.2d at 920*. The trial justice also observes "firsthand the work product of counsel throughout the trial and thus [is] better situated to assess the course of litigation and the quality of counsel." *Id.*

***Analysis***

The Court first observes that all of the attorneys in this case made every effort to zealously represent their clients' interests. The Court is particularly impressed with Attorneys Boren and Cuculo who, through Herculean efforts, managed to locate Mrs. Eifrig and, thereafter, see to her well-being and safety. The Court finds that the amounts charged by Attorneys Boren and Cuculo, and by the Guardian *ad litem*, Attorney Mark A. Sjoberg, to be reasonable and necessary; consequently, their respective Petitions for Attorneys Fees are granted.

This has been a troubling case from the outset. As the Court previously has observed, the mutual acrimony between Suzette and Francine is palpable and, at times, their behavior disturbing and not in their mother's best interest. Neither sister is without blame. The Court further observes [*8] that both sisters have incurred considerable attorneys' fees during the course of this litigation.

Attorney Mastronardi's Petition for Attorneys Fees is somewhat problematic. When Francine first filed for injunctive relief and for guardianship of her mother, she did so in her Capacity as Co-Trustee of the Trust, as well as, and under, her Durable Power of Attorney; thus, at that point, Attorney Mastronardi represented Francine in

her capacity as Co-Trustee. Consequently, Francine should not have to bear the expense of paying those particular attorneys fees.

However, Francine subsequently ceased acting in her mother's best interests and began a course of conduct to enhance her own interests. It is undisputed that Francine came to Rhode Island to protect her mother, and her mother's Trust. The Court provided such protection when it appointed Attorney Cuculo as Mrs. Eifrig's Temporary Limited Guardian, and when it froze all of Mrs. Eifrig's assets. As a result, the Court maintained the status quo until all pending matters could be resolved.

When Francine ordered Resource Bank not to release funds to Attorney Cuculo for her mother's care on May 24, 2007, and threatened that bank with legal [*9] action should it not comply with her demand, she not only disturbed the status quo, she ceased acting in her capacity as Co-Trustee of the Trust. Consequently, the Court finds that Francine is liable to Attorney Mastronardi for any attorney's fees and expenses that were incurred on, or after, May 24, 2007. Accordingly, the Court orders the Trust to pay Attorney Mastronardi's fees that were incurred before May 24, 2007, at the rate of $ 195 per hour, but not to pay any fees incurred on, or after, that date.

***Conclusion***

The Petitions for Attorneys Fees filed by Attorneys Boren, Cuculo and Sjoberg are granted. Attorney Mastronardi's Petition for Attorneys Fees is granted in part and denied in part. The Court retains jurisdiction over Attorney Cuculo, in her capacity as Guardian of the Person and of the Estate of Mrs. Eifrig.

Counsel shall submit an appropriate Order for entry.

**CERTIFICATE OF SERVICE**

I hereby certify that on October 9, 2007 a copy of the foregoing Supplemental Memorandum in Support of Motion for Appointment of Guardian Ad Litem was filed electronically. Notice of this filing will be sent to those who are currently on the list to receive e-mail notices by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

Parties may access this filing through the Court's system.

Robert C. Hinton